IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 18-cv-02590-MSK

IN RE:

**ROBERT JOHN STEMWEDEL**, and
**LINDA ANN KELLY**,

    Debtors.
-----------------------------------------------

**ROBERT JOHN STEMWEDEL**,

    Appellant,

v.

**PEAK PROPERTIES AND DEVELOPMENT, INC.**,

    Appellee.
_____

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT**
_____

**THIS MATTER** comes before the Court for determination of the Appellant's ("Mr. Stemwedel") appeal from the Bankruptcy Court's September 27, 2018 Order Granting Motion for Determination Regarding Disposition of Estate Asset. This Court has considered Mr. Stemwedel's opening brief **(# 19)**, the Appellee's ("Peak") response brief **(# 23)**, and Mr. Stemwedel's reply **(# 24)**, as well as the contents of the record in the Bankruptcy Court **(# 7)**.

**FACTS**

This appeal arises from a convoluted combination of a sale of property of a Mr. Stemwedel's bankruptcy estate and an arbitration arising out of a state court action.

Prior to 2011, Mr. Stemwedel served as corporate counsel to Peak, a real estate developer. Mr. Stemwedel's compensation was payable on a partially-contingent basis, 15% of the net fees that Peak received upon the completion of certain projects. In or about 2011, Mr. Stemwedel was terminated by Peak, but several projects that he had been involved with remained pending. Thus, he expected to receive compensation as those remaining projects were completed.

In 2011, Mr. Stemwedel[1] filed a voluntary Chapter 7 petition. He claimed a 75% wage exemption for the yet-to-be-paid contingent fees. This left the Estate with ownership of the remaining 25% of the unpaid fees ("the 25% interest").

In July 2014, Mr. Stemwedel offered to buy the Estate's 25% interest in the unpaid compensation for roughly $11,000. The Trustee moved for approval of that sale, and Peak responded with a counter-offer of roughly $16,000. The Trustee then sent creditors a notice of a sale that described the 25% interest to be sold and bidding procedures to be used but did not expressly state that the sale would be free and clear of liens. By November 2014, no alternative bids had been received, and consequently the Trustee sold the 25% interest to Peak for $16,000. Peak and the Trustee closed on the sale, and the Trustee moved for its approval. For unknown reasons, the proposed order submitted by the Trustee and issued by the Bankruptcy Court stated that the sale was free and clear of liens and encumbrances. No immediate objection was raised to the sale or the Bankruptcy Court's Order.

Several months later, Mr. Stemwedel asked the Bankruptcy Court to correct the sale order as to the sale being free and clear of encumbrances. In the intervening time, Mr.

---

[1] Mr. Stemwedel's petition listed a co-debtor, Ms. Kelly, but she is not materially involved with the instant dispute. For that reason, the Court treats Mr. Stemwedel as the sole debtor for purposes of this order.

Stemwedel had commenced an action against Peak in state court, seeking to collect the compensation still owed to him under the contingent fee arrangement. Peak had apparently contended that Mr. Stemwedel's claims were subject to certain offsets of payments that Peak had advanced to him, and the parties disagreed as to how – or even if – those offsets would affect the 25% interest that Peak had acquired from the bankruptcy estate. In June 2015, after hearing argument from the parties, the Bankruptcy Court found that "free and clear" language was not included in the notice, and thus its inclusion in the Order was improper. The Bankruptcy Court indicated an intention "to rescind the sale order on the basis of this and let the Trustee re-auction it."

However, it does not appear that Peak, Mr. Stemwedel, or the Trustee took any further action to do so. Instead, the Trustee filed her Final Accounting that showed that the Estate had been fully administered. The accounting reflected, among other things, that the $16,000 paid by Peak for the 25% interest had been fully distributed to creditors. Neither Peak nor Mr. Stemwedel objected to the Trustee's report, and the Bankruptcy Court closed the case.[2]

Mr. Stemwedel's state court action continued, and in 2017, the parties agreed to arbitration. The arbitration panel determined that Mr. Stemwedel was entitled to a total of $1,219,297 in unpaid compensation from Peak. The parties had requested that the arbitration panel also resolve the dispute over the 25% interest – Peak had argued that the arbitrator should reduce the amount Peak owed to Mr. Stemwedel by 25% to reflect Peak's purchase of the 25% interest in the Bankruptcy Court. The arbitration panel refused to address the 25% interest,

---

[2] Almost immediately thereafter, the Trustee moved to vacate the application so as to allow for the resolution of any disputes over the 25% share. The Bankruptcy Court denied that motion without prejudice on procedural grounds, indicating that the Trustee would first have to move to reopen the case. The Trustee neither moved to reopen nor took any other action thereafter.

3

deferring to the Bankruptcy Court. It stated: "[b]ecause the Bankruptcy Court vacated its earlier order which approved this sale to Peak, the Panel holds that Stemwedel is entitled to the full [contingent fee]"; "[i]f Peak believes its purchase of Stemwedel's interest survives [the Bankruptcy Court's] Order vacating the sale, then Peak must take this issue up with the Trustee in Bankruptcy Court."

Peak then returned to Bankruptcy Court requesting clarification of the ownership of the 25% interest – *i.e.* whether that share was owned by Peak, Mr. Stemwedel, or the Trustee, and whether Peak is entitled to a refund of the $!6,000 it initially paid to acquire that interest. After reopening the case and hearing argument, on September 27, 2018, the Bankruptcy Court issued as thorough and highly detailed decision.

The Bankruptcy Court ruled that the Trustee had validly sold the 25% interest to Peak. Specifically, the Court found: (i) when an asset sale occurs without proper notice, the Bankruptcy Court has a variety of options as to how to address the issue[3]; (ii) the Court's goal in setting aside the sale in 2015 was "to protect any party whose interests might be affected by a 'free and clear' sale" that was not actually free and clear; (iii) that the Trustee had received Peak's $16,000 payment for the 25% interest and had distributed that sum to Mr. Stemwedel's creditors and that it would be "inequitable, if not practically impossible" to retrieve those sums from the creditors; (v) that neither party had timely objected to the Trustee's failure to re-notice the 25% interest for sale in 2015; and (vi) that, ultimately, "the most equitable thing the Court can do is leave the parties were they are" – that is, with the 25% interest in the hands of Peak. The Court also addressed the effect of the arbitration award, rejecting Mr. Stemwedel's argument

---

[3] As noted by the Bankruptcy Court, sales of estate property can occur and can be enforced even though no court order is entered.

that the arbitration panel's finding that Peak's purchase of the 25% interest was vacated by the Bankruptcy Court should be given collateral estoppel effect. After expressing some doubt as to whether the arbitrator had the jurisdiction to construe its order, the Court ultimately held that the doctrine of collateral estoppel did not apply in any event because the arbitration finding as to the effectiveness of the sale of the 25% interest was, tentative, not final.

Mr. Stemwedel appeals from the Bankruptcy Court's September 2018 Order. Mr. Stemwedel raises two issues: (i) did the Bankruptcy Court err in upholding the sale of the 25% interest to Peak because the parties' misunderstandings about what was being sold in 2014 resulted in a distorted bidding process; and (ii) did the Bankruptcy Court err in not giving the arbitrator's ruling collateral estoppel effect.

**A. Standard of review**

In reviewing decisions by the Bankruptcy Court authorizing the Trustee to sell property under 11 U.S.C. §363(b), this Court reviews the Bankruptcy Court's factual findings for clear error and its legal determinations *de novo*. *In re Rich Global, LLC*, 652 Fed.Appx. 625, 629-30 (10th Cir. 2016). Decisions concerning whether to approve the sale of estate property are inherently equitable in nature, and this Court will reverse such determinations only if the Bankruptcy Court "achieves an unjust result amounting to a clear abuse of discretion." *Id.* Where, as here, the dispute involves the Bankruptcy Court's interpretation of its own prior orders, this Court grants substantial deference to those interpretations. *In re Taumoepeau*, 523 F.3d 1213, 1218 (10th Cir. 2008), *citing In re Bono Development, Inc.*, 8 F.3d 720, 722 (10th Cir. 1993) ("[t]he bankruptcy court surely knows more about the meaning of its own order than we do").

5

B. Discussion

1. Reinstatement of the sale

The Court turns first to Mr. Stemwedel's argument that the Bankruptcy Court's 2017 Order was erroneous. Mr. Stemwedel does not contend that the Bankruptcy Court's factual findings were erroneous in any way. Nor does he contend that the Bankruptcy Court misunderstood the provisions and requirements of 11 U.S.C. § 363(b) or any other law that governs this dispute. Rather, it appears that Mr. Stemwedel's objection is that the Bankruptcy Court abused its discretion by, essentially, confirming the sale of the estate's 25% interest despite its prior vacatur of the sale in 2015.

This Court agrees with the Bankruptcy Court's conclusion that it has the equitable discretion to fashion an appropriate remedy where a sale has occurred by the notice of that sale was later shown to be insufficient or deficient. *Citing S. Motor Co. of Dade County v. Carter-Pritchett-Hodges, Inc.*, 385 B.R. 347, 359 (Bankr. S.D. Fl. 2008). This Court also agrees with the Bankruptcy Court's conclusion that the appropriate equitable determination is one that "balance[s] the rights of the parties who did not receive notice with the rights of the purchaser and the interest of upholding the finality of sale orders."

In understanding the dynamics of the arguments, it is helpful to distinguish between two operative time periods, which are separated by the arbitration award. Prior to the arbitration, both Mr. Stemwedel and Peak believed the value of the 25% interest was relatively minimal – Mr. Stemwedel bid roughly $11,000 for it and Peak bid roughly $16,000. Mr. Stemwedel now argues that, had he understood that the 25% interest was being conveyed "free and clear" of liens and offsets, he would have bid more for it. But the record reflects that Peak – who ostensibly believed that the purchase would be free and clear of liens and encumbrances – affixed only

6

about a $5,000 premium to that fact.  Simply put, then, prior to the arbitration, neither party appeared to believe that the actual value of the 25% interest was significantly in excess of, say, $20,000.

The arbitration award seems to have shattered that illusion, however, quantifying the value of the 25% interest at roughly $400,000, some *20 times* the maximum value the parties had previously placed on it.  As the Bankruptcy Court correctly noted, the sudden increase in the value of the 25% interest now represents an unexpected "windfall" to the party that ultimately secures it.  But because that award is so dramatically inconsistent with the parties' positions when the sale was occurring – and the time when the parties' expectations about that sale were being formed – the effects of the arbitration award and the arbitration panel's rationale for reaching that award were not appropriate considerations for the equitable determination the Bankruptcy Court was required to make.  Put differently, the arbitration award so distorted the parties' expectations about the value of the 25% share that it would be improvident to give much weight to what the parties <u>now</u> say that they <u>would have</u> done about the 2014 sale.  Rather, the best evidence of the parties intentions and expectations concerning the sale are the events that actually occurred in 2014 and 2015.

When the Bankruptcy Court purported to set aside the sale in 2015, Peak had already paid the $16,000 bid price and the Trustee had already distributed those sums to Mr. Stemwedel's creditors.  The record reflects that neither Mr. Stemwedel nor Peak immediately pressed the Trustee to re-notice the 25% interest for sale, nor did Peak promptly demand a refund of its $16,000.  Rather, both simply allowed the case to be closed upon the Trustee's final accounting – the 75% interest subject to exemption and the 25% interest sold and the proceeds fully administered by the Trustee.

7

There is no dispute that in 2017 it was within the Bankruptcy Court's discretion to determine the parties' intent, the effect of its prior rulings and the appropriate approach with regard to a sale that was fully consummated but not properly noticed. The Bankruptcy Court's purpose in vacating the sale order was to accord creditors or interested parties (who might have an interest in acquiring the property "free and clear") the opportunity to bid on the 25% interest. It was not to allow Mr. Stemwedel or Peak a second swing at purchasing the asset. Neither party sought another notice of sale, nor challenged the closing of the estate even though final report gave full effect to the sale of the 25% interest. Thus, the Court finds no abuse of discretion by the Bankruptcy Court in finding that both sides understood that Peak's purchase of the 25% interest from the estate was effective , notwithstanding the vacation of the sale order.

The Bankruptcy Court's additional analysis also shows no abuse of discretion. Allowing Peak to retain the benefit of the 25% interest is consistent with the Bankruptcy Court's findings regarding the parties' understandings and expectations at the time of the sale and the closing of the estate. And the Bankruptcy Court – properly – gave significant weight to the public interest in finalizing sales and encouraging buyers to purchase Estate property, an outcome that is also advanced by treating the sale of the 25% interest to Peak as having been effective despite the 2015 order.

Accordingly, this Court rejects Mr. Stemwedel's argument that the Bankruptcy Court abused its discretion in 2017 by allowing the sale of the 25% interest to stand, despite the vacatur of the order approving the sale in 2015.

2. <u>Collateral estoppel</u>

The parties agree that state law governs the preclusive effect to be given to arbitral awards, and they do not challenge the Bankruptcy Court's finding that Colorado law can give preclusive effect to arbitral awards that, like the one here, have not subsequently been judicially confirmed.

Under Colorado law, the party invoking collateral estoppel – here, Mr. Stemwedel – must show: (i) that the issue to be precluded is identical to an issue actually litigated in the prior proceeding; (ii) that the party against whom estoppel is to be used was a party to or in privity with a party to the prior proceeding; (iii) that there was a final judgment on the merits and that the prior tribunal's ruling on the issue was essential to that judgment; and (iv) that the party to be estopped had a full and fair opportunity to litigate the issue in the prior proceeding. *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014).

This Court agrees with the Bankruptcy Court that Mr. Stemwedel's collateral estoppel argument fails because the arbitration panel's decision was not a finding of fact that was essential to the entry of a final judgment. The pertinent portion of the arbitration panel's opinion reads as follows:

> Peak argues that it purchased Stemwedel's interest in the Riverwalk contingency fee through Stemwedel's bankruptcy. Because the Bankruptcy Court vacated its earlier order which approve this sale to Peak, the Panel holds that Stemwedel is entitled to the full 15% contained in the 1996 Agreement. Any claim Peak might make against the trustee for money paid for Stemwedel's interest would essentially challenge the Bankruptcy Judge's Order vacating the sale. If Peak believes its purchase of Stemwedel's interest survives Judge Brown's June 2, 2015 Order vacating the sale, then Peak must take this issue up with the Trustee in Bankruptcy Court.

Only the second sentence – "Because the Bankruptcy Court vacated . . . ." – reflects the Panel's specific resolution of a factual issue: what Stemwedel's rights are under the 1996 Agreement absent a sale by the Bankruptcy estate. This determination assumes that there was no enforceable sale of the 25%, but the next two statements indicate the panel's view that it is the Bankruptcy Court that makes such determination. Ultimately, the panel invites Peak to "take this issue up with" the Bankruptcy Court if Peak believed that the Panel's interpretation of the events in the bankruptcy case was incorrect. If the Panel intended for its own ruling to preclude Peak from going back to the Bankruptcy Court to raise that issue, its invitation to Peak to do so would be illusory and meaningless. The only appropriate interpretation of the Panel's decision is that it was making a <u>tentative</u> finding that Peak's acquisition of the 25% interest was nullified, subject to the Bankruptcy Court's right to overrule that finding in subsequent proceedings if it disagreed with the Panel's understanding of its 2015 order.

Accordingly, this Court rejects Mr. Stemwedel's contention that the Bankruptcy Court erred in refusing to give collateral estoppel effect to the arbitration panel's determination.

## **CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's decision is **AFFIRMED**. The Clerk of the Court shall close this case.

Dated this 19th day of September, 2019.

**BY THE COURT:**

_Marcia S. Krieger_
Marcia S. Krieger
Senior United States District Judge